UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **PACE CONSTRUCTION SERVICES L L C** | **:** | **CASE NO. 2:23-CV-00197** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **FEDERAL INSURANCE CO** | **:** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM ORDER

Before the Court is a Motion to Stay, or in the Alternative, for Extension of Time, filed by defendant Federal Insurance Company. Doc. 8.

For the reasons that follow, **IT IS ORDERED** that the Motion to Stay [doc. 8] is **GRANTED** and that the litigation is stayed until the earlier of the completion of the contractual dispute resolution procedures described in Section 11.1.2 of the Subcontract or entry of an order by this Court lifting the stay; provided, however, that notwithstanding the stay discovery may proceed as described below.

**IT IS FURTHER ORDERED** that plaintiff Pace Construction Services ("Pace") is authorized to conduct limited discovery concerning facts relevant to the stay request, including without limitation whether and the extent to which non-party Sauer Incorporated intends to pursue claims on Pace's behalf with the Owner, the progress made toward resolution of those claims between Sauer Incorporated and the Owner, and whether any claims raised by Pace in this litigation have completed the contractual claims resolution process.

**IT IS FURTHER ORDERED** that the undersigned will conduct a telephone status conference with the parties on **December 11, 2024, at 11:00 a.m.** to discuss progress toward

resolution of the claims necessitating the stay. To participate in the conference, counsel are to call the Chambers Teleconference Line at 877-336-1274, Access Code 7066014.

# I.
## BACKGROUND

This Miller Act litigation arises from a construction project to renovate barracks at the U.S. Army Base at Fort Johnson (formerly Fort Polk) in Vernon Parish, Louisiana. Doc. 1, pp. 1-2. Plaintiff Pace is a subcontractor who performed work on the project. *Id*. Pace's work was governed by a Subcontract between itself and Sauer Incorporated ("Sauer"), the Design-Builder for the project. Sauer contracted directly with the owner of Fort Johnson, the Department of the Army-Fort Worth Division (the "Owner"). As required by the Miller Act, 40 U.S.C. § 3131 *et seq.*, Sauer's surety, Federal Insurance Company ("FIC"), executed a payment bond in the amount of the prime contract.[1] *Id.* at 1-3.

Pace initiated this Miller Act lawsuit against FIC for delay damages and remaining amounts owed under the Subcontract. Doc. 1. The Complaint alleges that, "per change orders authorized by the Subcontract and executed by Sauer," the contract price was increased over the course of the project due to factors outside of Pace's control, including the discovery of asbestos, Sauer's unilateral work stoppages, the COVID pandemic, unusually bad weather, and "Sauer's discovery

---

[1] The Miller Act provides a contractor on a government construction project with a remedy analogous to a state-law lien. "The general contractor on most government projects must give the United States a payment bond, and subcontractors or others who provide goods and services on the project may sue on the bond for amounts that the contractor does not pay." *Hicks Elec. Co. v. Pac. Tech-Sauer, Inc.*, No. 15-CV-1059, 2016 WL 5173583, at *2 (W.D. La. Aug. 25, 2016), *report and recommendation adopted*, No. CV 15-1059, 2016 WL 5210577 (W.D. La. Sept. 21, 2016) (citing 40 U.S.C. §§ 3131, 3133)).

that the parapet walls were not structurally connected to the roof deck and Sauer's directive to Pace to perform extra work to fix the issue before proceeding." *Id.* at ¶¶ 9-11.

In its Motion to Stay, or, in the Alternative, for Extension of Time [doc. 8], FIC argues that the Subcontract requires Pace to stay this litigation while Sauer pursues contractually-required dispute resolution vis-à-vis the Owner. The issue before the court is whether Section 11.1.2 of the Subcontract (the "Stay Provision") requires this litigation to be stayed. The Stay Provision states:

> It is expressly agreed that if Subcontractor files a Miller Act lawsuit which includes any claim(s) involving the correlative rights or duties of Owner, and such claim(s) is/are not otherwise dismissed by the Court, the Subcontractor shall stay the lawsuit for such time as necessary to pursue such claim(s) against the Owner pursuant to the terms of this paragraph.

Doc. 10, att. 1, p. 28. Section 11.1.2 requires, inter alia, that the "Subcontractor shall submit all claims for extra costs for which the Owner is or may be liable through Design-Builder for transmittal to the Owner [ . . . ]" and prescribes procedures governing the transmittal of those claims.

Since the initial round of briefing on this motion [docs. 8, 10, 12], the Parties have submitted supplemental briefing [docs. 20-21], and have come before this Court for hearing [doc. 22]. As of the date of the motion hearing, FIC identifies the following issues that remain outstanding and warrant a stay of the proceedings under the Stay Provision: Sauer submitted requests for equitable adjustment ("REAs") to the Owner "seeking millions of dollars in costs and time impacts allegedly owed by the owner[,]" and "at least one," REA001, includes claims on behalf of Pace and is not yet resolved.[2] Doc. 21, p. 2. FIC also confirmed at hearing its understanding that delay damages related to the parapet wall change order ("Change Order No.

---

[2] REA001 concerns costs associated with unforeseen conditions of non-structural Chase infills, and it includes a claim for $8,500 submitted on Pace's behalf, Doc. 21, att. 1, p. 2.

3

6") are still pending within the REAs.[3]  Additionally, the Owner assessed Sauer approximately $3 million in liquidated damages, but the Owner is "reconsidering" that figure because of the pending REAs.[4]

## II.
### THE PARTIES' ARGUMENTS

Defendant FIC argues that the Stay Provision requires this litigation to be stayed pending the contractual dispute resolution because the Owner may be liable for some of the claims that are the subject of Pace's lawsuit and the issues described above remain unresolved. Doc. 8.

Pace urges that Sauer has long maintained that it owes no further amounts to Pace for its work and "there is no reasonable basis for expecting that any of the amounts claimed by Pace in this litigation will be paid to Pace if Sauer obtains additional funds (for work Pace performed) [ . . . ]" from the Owner. Doc. 10, p. 9. Pace also raises arguments relating to the purpose of the Miller Act and the policies effected by it. Pace argues that the stay provision amounts to a waiver of its right under the Miller Act to immediately claim reimbursement from FIC, and any such waiver must be clear and unequivocal. Doc. 10, p. 13-14.

---

[3] The initial briefing on this motion devoted significant attention to Change Order No. 6. The Complaint specifically discusses the work performed pursuant to Change Order No. 6, *i.e.*, extra work related to the discovery that parapet walls were not structurally connected to the roof deck. Doc. 1, p. 3, ¶ 10. On its face Change Order No. 6 implicates the Owner's correlative rights and duties because it establishes that the Owner may bear responsibility for the costs required to remedy the condition of the parapet wall, triggering the Stay Provision. Doc. 8, att. 2. At hearing, FIC confirmed its understanding that Sauer submitted a claim for Change Order No. 6 to the Owner, and that the Owner has paid Sauer the *direct* costs associated with Change Order No. 6, but that *delay* claims relating to Change Order No. 6 are still pending within the REAs. FIC declined to confirm, however, that Pace stands to benefit from the resolution of those delay claims, citing contract-based defenses. Since the Stay Provision contemplates a stay of Miller Act claims only for such time as is necessary to pursue them against the Owner pursuant to the contractual dispute resolution procedures, that time may have come and gone, at least as regards the claims for Change Order No. 6.

[4] It is not clear to the Court whether or how the Owner's reconsideration of the liquidated damages assessment will affect the claims Pace raises in this litigation.

4

# III.
## ANALYSIS

The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted); *see also United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005). In deciding whether a stay should be granted, the Court is guided by the factors of judicial economy and convenience for the Court, for counsel, and for the parties. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "[H]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *In re Beebe*, 56 F.3d 1384 (5th Cir. 1995) (quoting *Landis*, 299 U.S. at 254-55). In Miller Act litigation, a "Court should not exercise its power to stay proceedings lightly." *United States for Use & Benefit of TSI Tri-State Painting, LLC v. Fed. Ins. Co.*, No. CV 216-113, 2016 WL 7385715, at *4 (S.D. Ga. Dec. 20, 2016).

As discussed above, at least three issues remain unresolved that may implicate the Owner's "correlative rights and duties"[5] referenced in the Stay Provision of Section 11.1.2.[6] Accordingly, the Court agrees with Defendant FIC that the litigation should be stayed during the completion of the contractual dispute resolution procedures as to those issues, per the Stay Provision. *See United States v. FEDCON Joint Venture*, No. CV 16-13022, 2017 WL 897852, at *3 (E.D. La. Mar. 7,

---

[5] The term "correlative rights and duties" is not defined in the Subcontract; for the purposes of this motion, the Court treats "correlative rights and duties" as those that are incidental to and flow from a conventional or legal obligation, here the Subcontract. *See HDRE Bus. Partners Ltd. Grp., L.L.C. v. RARE Hosp. Int'l, Inc.*, 834 F.3d 537, 540 (5th Cir. 2016).

[6] Section 11.1.2 of the Subcontract requires that "Subcontractor shall submit all claims for extra cost for which the Owner is or may be liable" through Sauer, and it provides that the Subcontractor "shall stay" any Miller Act lawsuit "which includes any claim(s) involving the correlative rights or duties of the Owner" to allow for claim resolution called for in the contract. Doc. 10, att. 1, p. 28. Similarly, Section 11.4 states that "Resolution of disputes between the Subcontractor and the Design-Builder involving in whole or in part disputes between the Design-Builder and the Owner shall be stayed pending conclusion of any dispute resolution proceeding between the Design-Builder and the Owner." Doc. 10, att. 1, p. 28-29.

2017)(staying litigation for completion of contractual dispute resolution as to claims for which the U.S. Army Corps of Engineers "has, or may have, responsibility," based on attestation that "USACE has acknowledged at least partial responsibility for the conditions that form the basis of GLF Construction's claims."). From a judicial economy standpoint, the stay of some claims necessitates the stay of the litigation because it makes no sense to attempt to resolve this matter in a piecemeal fashion.

Some limited discovery is warranted, however, because Pace raises valid concerns as to whether Sauer intends to pursue additional claims on Pace's behalf other than REA001 identified in FIC's supplemental briefing, as well as concerns regarding the status and progress of claims being pursued. Other discoverable information, such as whether the Owner has acknowledged some responsibility for the conditions giving rise to Pace's claims, *See United States v. FEDCON Joint Venture*, 2017 WL 897852, at *3, also may be of use in determining whether a continued stay is warranted.

In exercising its discretion to stay these proceedings, the Court takes into account Pace's additional arguments that a stay is contrary to the purpose and policy of the Miller Act. Pace argues that the stay provision amounts to a waiver of its right under the Miller Act to immediately claim reimbursement from FIC, and any such waiver must be clear, unequivocal, and incorporated into the Subcontract. Doc. 10, p. 13-14. The Court is mindful that the Miller Act "was drafted to provide an alternate remedy to protect subcontractors who supply labor or materials to a general contractor on a federal construction project" and was intended to protect subcontractors' interests. *U.S. on Behalf of Cal's A/C v. Famous Const. Corp.*, 982 F. Supp. 1219, 1219 (W.D. La. 1997). "[T]he courts do not favor finding that a subcontractor has contractually abandoned his rights under the act." *H. W. Caldwell & Son, Inc. v. U. S. for Use & Benefit of John H. Moon & Sons,*

6

*Inc.*, 407 F.2d 21, 23 (5th Cir. 1969). Indeed, a subcontractor cannot be deprived of its Miller Act right to pursue claims without a "clear and express waiver of the right to sue under the Act." *Id.* at 24.

Pace acknowledges, however, that the last sentence of Section 11.1.2 of the Subcontract "expressly addresses a stay of a Miller Act lawsuit, and thus could constitute the sort of clear and unequivocal waiver contemplated by the jurisprudence." Doc. 10, p. 17. To the extent that the Stay Provision constitutes a waiver of Pace's Miller Act rights to litigate its claims within a certain timeframe, the Court finds it clear and unequivocal. The Court also finds that it creates a practical mechanism by which plaintiff's Miller Act claims may be initiated and preserved, with the resolution to take place after resolution of contractual claims against the Owner. *See U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976). To this point, the Court notes Section 11.1.2 does not waive entirely Pace's right to pursue payment under the Miller Act. Instead, it authorizes a stay of pending litigation claiming payment "for such time as necessary to pursue such claim(s) against the Owner" pursuant to the parties' agreed claims resolution procedure. Doc. 10, att. 1, p. 28. The Court does not intend the stay to be indefinite, however, and will only countenance the stay for the time reasonably necessary for Sauer, in good faith exercising due diligence under the circumstances, to pursue contractual dispute resolution as to the claims Pace makes in this Miller Act litigation.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Stay is **GRANTED** and that the litigation is stayed until the earlier of the completion of the contractual dispute resolution procedures described in Section 11.1.2 of the Subcontract or entry of an order by this Court lifting

the stay; provided, however, that notwithstanding the stay limited discovery may proceed as described above.

**IT IS FURTHER ORDERED** that the undersigned will conduct a telephone status conference with the parties on **December 11, 2024, at 11:00 a.m.** to discuss progress toward resolution of the claims necessitating the stay. Counsel are to call the Chambers Teleconference Line at 877-336-1274, Access Code 7066014.

**THUS DONE AND SIGNED** in chambers this 27th day of September, 2024.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**